IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLY F. NEALS, Individually<br>And on Behalf of All Others<br>Similarly Situated, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| vs. | ) <br> ) | CIVIL ACTION NO. _____ |
| MORTGAGE GUARANTEE<br>INSURANCE CORPORATION, | ) <br> ) <br> ) | HON. _____ |
| Defendant. | ) <br> ) | ELECTRONICALLY FILED |

## CLASS ACTION COMPLAINT

Plaintiff Carly F. Neals, by her undersigned counsel, respectfully submits this Class Action Complaint seeking damages and injunctive relief based on Defendant's unlawful policy and practice of denying private mortgage insurance ("PMI") to women on maternity leave. Plaintiff seeks damages and injunctive relief on behalf of herself and the class that she seeks to represent.

The following allegations are based on Plaintiff's personal knowledge, or on knowledge, information, and belief formed after reasonable investigation.

### A.      PARTIES

1.      Plaintiff resides in Wexford, Pennsylvania and is the mother of three children.

2.      Defendant Mortgage Guaranty Insurance Corporation ("MGIC") is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.   MGIC is engaged in a continuous and systematic course of business in Pennsylvania.

**B.      JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves one or more questions arising under federal law.

4.      This Court has subject matter jurisdiction over Plaintiff's claims under the Fair Housing Act, 42 U.S.C. § 3613 *et seq.* pursuant to 28 U.S.C. § 1343(a)(4) and 42 U.S.C. § 3616(a)(1)(A).

5.      Additionally, this Court has subject matter jurisdiction over Plaintiff's claim under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* pursuant to 15 U.S.C. § 1691e(f).

6.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims before the Court occurred in this District and the property that is the subject of this action is situated in this District.

**C.      FACTUAL ALLEGATIONS**

7.      In early May 2010, Plaintiff applied to refinance the primary mortgage on her home.  At the time she applied, plaintiff was pregnant.

8.      Plaintiff generally satisfied the financial criteria of the lender (PNC Mortgage). However, because she would be financing more than eighty percent of the value of her residence, the lender required Plaintiff to purchase PMI.

9.      Following an initial credit check (which Plaintiff passed), the lender arranged for Plaintiff's home to be appraised.  The appraisal subsequently indicated that the home would serve as adequate collateral for the loan.

10.     As of early June the lender had determined that, subject to the need to obtain PMI, Plaintiff was credit worthy for purposes of the refinancing.

11.     In June 2010, Plaintiff gave birth to a child and commenced paid maternity leave as provided to her by her employer.  Pursuant to the employer's maternity leave policy, Plaintiff's take home income was the same before and after she took maternity leave.   Moreover, in accordance with federal law, Plaintiff's employer held her position for her while she was on maternity leave.

12.     On July 11, 2010, Plaintiff inquired as to the status of her refinancing and was told that the lender was not prepared to close because it was awaiting approval from the mortgage insurer.

13.     On July 25, 2010, Plaintiff inquired again as to the status of her refinancing. Through email communication, Plaintiff learned for the first time of a "problem" with the refinancing.  Specifically, the lender could not close because, "She is on maternity leave.  She has to be back to work to close."   As a result of this "problem," Plaintiff was unable to close the refinancing during July 2010.

14.     On or about August 2, 2010, Plaintiff commenced a period of paid vacation following her maternity leave.  Plaintiff then inquired as to whether she could now close the refinancing.  Plaintiff learned through email communication that "the Mortgage insurance company that was requiring the letter saying Carly was back to work is now stating that the fact she is an active, full time employee is not enough.  They want something that says directly that Carly is back from her Maternity Leave as of 8/2."

15.     On or about August 10, 2010, Plaintiff's employer provided a letter stating that she had returned to work and was now on vacation.

3

16.     On August 13, 2010, Plaintiff again inquired as to the status of the refinancing. She was informed that the letter from her employer was not sufficient and that the "MI company . . . stated that they wanted a paystub showing [Plaintiff] had returned before they would approve . . . ." The lender further informed Plaintiff that "the MI company is the one requiring that I physically return to work."

17.     On or August 13, 2010, Plaintiff asked the lender to provide MGIC with a newspaper article and point out to MGIC that it is illegal to deny credit because an applicant is pregnant or on maternity leave.

18.     On August 16, 2010, Plaintiff again inquired as to the status of the refinancing and was informed by the lender that "it is MGIC's policy that borrower's [sic] must be back to work and receive a paystub with full pay prior to closing."

19.     On August 19, 2010, Plaintiff provided the lender with a pay stub showing that she was taking "STD vacation." The lender thereafter informed Plaintiff that MGIC's management had granted an "exception" and was prepared to close.

20.     The lender thereafter provided Plaintiff with a draft HUD-1 Settlement Statement which contained numerous discrepancies and additional charges. In light of these numerous discrepancies, and due to her substantial frustration in dealing with the numerous delays and requests for additional information relating to her maternity leave, Plaintiff elected not to proceed with the closing.

21.     Plaintiff was thereafter informed that her loan had been rejected by the lender because "Value or Type of Collateral not Sufficient." It is believed and therefore averred that this statement reflected the continuing application of MGIC's unlawful policy in relation to women on maternity leave.

22.     As a proximate cause of MGIC's unlawful policy and the related delays associated with the closing of her loan, plaintiff suffered financial injuries.  These financial injuries included, but were not limited to the continuation of the higher costs associated with her existing home loan, including excess interest and PMI premium charges, and unnecessary out-of-pocket costs, such as appraisal and pay-off letter charges.  Additionally, Plaintiff suffered substantial emotional distress and interference with her home life.  Plaintiff was forced to devote considerable and substantial efforts to deal with the stress and delay associated with MGIC's unlawful policy during the first few months of her new born child's life.  Put another way, instead of spending her time bonding with her new born baby, Plaintiff was forced to spend the time doing battle against MGIC's unlawful policy.

### D.     CLASS ACTION ALLEGATIONS

23.     The acts, practices and conduct of which Plaintiff complains commonly affect a class (the "Plaintiff Class") consisting of all persons within the United States who, within two years prior to the filing of this Complaint, up to and including the time of trial, attempted to purchase PMI through MGIC for a residential mortgage loan and who were, or expected to be (or whose co-applicant was, or expected to be) on maternity leave at the time of loan closing.

24.     The members of the Plaintiff Class are so numerous that joinder is impractical. Upon information and belief, the Plaintiff Class is comprised of thousands of individuals.

25.     This action can be efficiently and effectively managed as a class action.  The size of the Plaintiff Class is not so large that management of the action as a class action will be excessively difficult.

26.     There are questions of law and fact common to the members of the Plaintiff Class, which questions predominate over any individual issues.

27.     Plaintiff's claims are typical of the claims of all members of the Plaintiff Class. By proving her case, Plaintiff will simultaneously prove the case of the members of the Plaintiff Class.

28.     Plaintiff will fairly and adequately protect the interests of the Plaintiff Class. Plaintiff is willing and able to serve as representative of the Plaintiff Class, and has no knowledge of any possible divergent interest between or among Plaintiff and any member of the Plaintiff Class. Plaintiff has engaged competent counsel capable of providing effective representation on behalf of Plaintiff and the Plaintiff Class.

29.     The prosecution of separate actions by individual members of the Plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Plaintiff Class which would create incompatible standards of conduct for MGIC.

30.     The prosecution of separate actions would also create a substantial risk of adjudications with respect to individual members of the Plaintiff Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

31.     MGIC has acted or refused to act on grounds that apply generally to the Plaintiff Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Plaintiff Class as a whole.

32.     Questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting individual members. With respect to liability issues, the determinative facts and legal principles apply universally to Plaintiff and the members of the Plaintiff Class. Indeed, this case focuses on one predominating legal issue -- whether MGIC's policy and practice of denying PMI based on pregnancy and/or maternity leave status

6

(hereinafter the "Policy") represents unlawful discrimination.  This predominating issue is a common issue affecting Plaintiff and all members of the Plaintiff Class.

33.     A class action would be a superior method of adjudicating the claims of the Plaintiff Class.

34.     In light of the complexity of the issues and the expense of litigation, the separate claims of members of the Plaintiff Class are insufficient in amount to support separate actions and, in the absence of class certification, members of the Plaintiff Class will, as a practical matter, be effectively precluded from protecting and enforcing their legal rights.

35.     The interest of members of the Plaintiff Class in individually controlling the prosecution of separate actions does not outweigh the benefits to them as a result of having their claims litigated with the Plaintiff Class.

36.     Plaintiff is not aware of any litigation that has been commenced by or against members of the Plaintiff Class or MGIC involving any of the issues presented in this case.

37.     It is desirable to have the claims arising from the unlawful practice concentrated in a single forum so that a single court may manage all claims relating to the unlawful policy alleged herein.

### E.     CAUSES OF ACTION

Pleading in the alternative, Plaintiff alleges the following causes of action on behalf of herself and the Plaintiff Class.

### COUNT I
### FAIR HOUSING ACT

38.     The allegations of paragraphs 1 through 37 of this Complaint are incorporated by reference as if fully rewritten herein.

39.     This claim is brought under the Fair Housing Act ("FHA"), 42 U.S.C. 3601 *et seq*.

40      Section 3604(a) of FHA provides that it shall be unlawful, "[t]o refuse to . . . make available or deny, a dwelling to any person because of . . . sex [or] familial status . . . ."

41.     Section 3604(b) of FHA provides that it shall be unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex [or] familial status . . . ."

42.     FHA Section 3604(3)(B) states that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling."

43.     FHA Section 3602(k) defines "familial status" to include "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent . . . ." FHA Section 3602(k) further provides that "[t]he protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant."

44.     Section 3605(a) of FHA provides, "It shall be unlawful for any person or entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of . . . sex [or] . . . familial status."

45.     Section 3605(b) defines "residential real estate-related transaction" to include, "[t]he making or purchasing of loans or providing other financial assistance . . . secured by residential real estate."

46.     24 C.F.R. §100.70(b) adds that "it shall be unlawful, because of . . . sex [or] . . . familial status . . . to engage in any conduct relating to the provision of housing or of services and facilitates connected therewith that otherwise makes unavailable or denies dwellings to persons."  Prohibited activities under this section include "[e]mploying codes or other devices to segregate or reject applications [or] purchasers . . . because of sex . . . [or] familial status."  24 C.F.R. § 100.70(d)(2).

47.     MGIC's Policy as alleged herein violates FHA, including but not necessarily limited to, the foregoing statutory provisions and regulations.

48.     In violation of FHA, MGIC denied PMI to Plaintiff and thereby delayed and prevented the closing of her refinancing based on her sex and familial status.

49.     Through the implementation of its unlawful Policy, MGIC willfully and wantonly discriminated against Plaintiff on the basis of familial status and sex in violation of FHA.

50.     As a result of MGIC's unlawful conduct, Plaintiff and the members of the Plaintiff Class suffered substantial damages.

51.     FHA Section 3613(a)(1)(A) permits a civil action to be brought by any person or class of persons suffering damages for acts or policies in violation of FHA.

52.     As a direct and proximate result of MGIC's unlawful discrimination, Plaintiff has suffered damages.

## COUNT II

## EQUAL CREDIT OPPORTUNITY ACT

53.     The allegations of paragraphs 1 through 52 of this Complaint are incorporate by reference as if fully rewritten herein.

54.     The Equal Credit Opportunity Act, 15 U.S.C. § 1691(a) ("ECOA"), provides, "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction – (1) on the basis or marital status."

55.     ECOA defines "creditor" as any person who "regularly extends, renews, or continues credit [or] arranges for the extension, renewal, or continuation of credit."  15 U.S.C. § 1691a(e).

56.     MGIC is "creditor" within the meaning of ECOA.

57.     Plaintiff is an "applicant" within the meaning of ECOA.  15 U.S.C. § 1691a(b).

58.     Under 12 C.F.R. § 202.6 (a), "a creditor may consider any information obtained, so long as the information is not used to discriminate against an applicant on a prohibited basis." The regulation specifically provides under the heading "Childbearing, childrearing," that "[i]n evaluating creditworthiness, a creditor shall not make assumptions or use aggregate statistics relating to the likelihood that any category of persons will bear or rear children or will, for that reason, receive diminished or interrupted income . . . ."  12 C.F.R. § 202.6 (b)(3).

59.     The MGIC Policy as alleged herein violates ECOA, including but not necessarily limited to, the foregoing statutory provisions and regulations.

60.     ECOA provides a private right of action to any person or class of persons that violates ECOA and the associated regulations.  15 U.S.C. § 1691e.

61.     Plaintiffs and the members of the Plaintiff Class have suffered substantial damages as a result of MGIC's violation of ECOA and the associated regulations.

**WHEREFORE**, Plaintiff prays that the court grant the following relief:

(a) Assume jurisdiction of this action; and

(b) Certify this action as a class action pursuant to all applicable provisions of the Federal Rules of Civil Procedure; and

(c) Appoint Plaintiff as representative of the Plaintiff Class and appoint the undersigned as counsel for the Plaintiff Class; and

(d) Declare the defendant's actions complained of herein to be in violation of the FHA and/or the ECOA; and

(e) Order MGIC to take appropriate action to ensure that the activities complained of are not engaged in again by MGIC or any of its agents or employees; and

(f) Permanently enjoin MGIC, its agents, employees and successors from discrimination on the basis of sex and/or familial status in violation of FHA and/or ECOA; and

(g) Award actual damages in an amount to be proven at trial; and

(f) Award compensatory damages in an amount to be proven at trial; and

(g) Award punitive damages to the extent, if any, permissible under law based on the evidence adduced at trial; and

(h) Award reasonable attorney's fees and costs of suit to the extent provided by law; and

(i) Grant such further and additional relief as the Court deems just and proper.

**A JURY TRIAL IS DEMANDED TO THE EXTENT AVAILABLE UNDER LAW.**

Respectfully submitted,

Dated:  October 1, 2010

s/Adrian N. Roe
Adrian N. Roe
Pa. Bar No. 61391
Law Office of Adrian N. Roe P.C.
Suite 1331 The Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
(412) 434-8187
aroe@roelawoffice.com