IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARLY F. NEALS, Individually )
And on Behalf of All Others Similarly )
Situated, )
      Plaintiff, )
       )
      vs )   Civil Action No. 10-1291
       )
MORTGAGE GUARANTY INSURANCE )
CORPORATION, )
      Defendant. )

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion to dismiss the amended complaint (Document No. 16) be granted as to Counts II and III and as to claims asserted under 42 U.S.C. §§ 3604(a) and 3605 in Count I, and denied in all other respects.

II. Report:

Presently before the Court is a motion to dismiss the amended complaint submitted by the defendant. For reasons discussed below, the defendant's motion to dismiss should be granted in part and denied in part.

The plaintiff, Carly F. Neals, has filed an amended class action complaint against the defendant, Mortgage Guaranty Insurance Corporation ("MGIC"). In the three-count amended complaint, the plaintiff contends that MGIC has a policy and practice of denying private mortgage insurance ("PMI") to persons on short term disability leave, including but not limited to women on maternity leave, in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq. (Count I), and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq.

(Count II).[1] According to the plaintiff, on or about July 26, 2010, MGIC discriminated against her on the basis of her sex and familial status by declining to issue PMI to her lender because she was on maternity leave.

The plaintiff also claims that MGIC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. (Count III), by failing to issue notice of its adverse action taken against her in connection with her loan application. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

In the amended complaint, the plaintiff asserts that in August 2007, she and her husband purchased their home and financed the purchase by means of a mortgage loan from IndyMac Bank (Amended Complaint at ¶¶ 6-7). On or about May 14, 2010, the plaintiff sought to refinance her home loan through PNC Mortgage ("PNC"), a division of PNC Bank (Id. at ¶¶ 13-14). At the time she applied to PNC for refinancing, the plaintiff was about eight months pregnant (Id. at ¶ 20). Shortly after applying for refinancing, PNC informed the plaintiff that her application had been preliminarily approved, but because she planned to finance more than eighty percent of the value of her residence on the new loan, PNC required her to purchase PMI (Id. at ¶¶ 19, 21-22).

In June 2010, the plaintiff gave birth to a child, and on June 21, 2010, she commenced paid maternity leave pursuant to her employer's policy (Id. at ¶ 20). To cover the plaintiff's loan, PNC sought to obtain mortgage insurance from Genworth Financial, but in mid-July, 2010, Genworth Financial declined to issue the mortgage insurance (Id. at ¶¶ 25, 27). PNC then

---

[1] In pertinent part, § 3604(b) of the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of… sex [or] familial status". 42 U.S.C. § 3604(b). The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction… on the basis of… sex or marital status." 15 U.S.C. § 1691(a)(1).

applied to defendant MGIC for mortgage insurance on the plaintiff's loan (Id. at ¶ 28).

On July 26, 2010, PNC told the plaintiff there was a problem with her planned refinancing, as MGIC was unwilling to issue PMI because she was on maternity leave (Id. at ¶ 30). As a result, PNC could not close on her loan as previously scheduled (Id. at ¶ 31). In order to rectify the problem, the plaintiff's employer provided a letter stating that irrespective of her maternity leave, the plaintiff was still an active, full time employee, and her income stream remained constant (Id. at ¶¶ 36-37). Nevertheless, in early August 2010, MGIC declined to issue PMI until the plaintiff returned to her job (Id. at ¶ 41).

On August 13, 2010, PNC advised the plaintiff that MGIC wanted a pay stub showing she had returned to work before it issued PMI (Id. at ¶ 42). On August 19, 2010, the plaintiff provided PNC with a pay stub showing she was taking "STD [short term disability] vacation", and PNC forwarded the information to MGIC; thereafter, MGIC informed PNC it was prepared to issue PMI and would make an exception to its policy in this instance (Id. at ¶ 51).

On August 24, 2010, the plaintiff received a proposed HUD-1 Settlement Statement from PNC which contained numerous discrepancies, including an inaccurate tax charge and an incorrect statement of the payoff amount on the IndyMac Bank loan (Id. at ¶ 52). Since the loan closing was scheduled the next day, August 25, 2010, and as the plaintiff was returning to her job on August 26, 2010, she elected not to proceed with the closing or correct the discrepancies in the HUD-1 Statement, choosing instead to spend her last day of paid vacation with her new baby (Id.). Thereafter, PNC issued her a notice, informing her that her loan had been rejected due to insufficient collateral, which she believes reflected MGIC's policy concerning women on maternity leave (Id. at ¶ 53).

The plaintiff contends that due to MGIC's discriminatory policy and its initial refusal to

issue PMI, she suffered financial injuries, such as "the continuation of the higher costs associated with her existing home loan including interest and PMI premium, unnecessary out-of pocket costs such as appraisal and pay-off letter charges, and unnecessary use of paid leave expended … to demonstrate to MGIC that her income was continuous." (Id. at ¶ 55). By its actions, MGIC is also said to have caused the plaintiff emotional distress and interfered with her home life. (Id.).

Based on these facts, the plaintiff contends that MGIC denied PMI to her and thereby delayed and prevented the closing of her refinancing based on her gender and familial status in violation of the FHA (Count I) and the ECOA (Count II). The plaintiff also claims that MGIC violated the FCRA by failing to send her notice of its "adverse action" in preliminarily denying her PMI while she was on maternity leave (Count III).

MGIC has moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that it fails to state a viable claim. In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC, 578 F.3d 203, 210-11 (3d Cir. 2009), citing Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949 (2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211, quoting Iqbal, 129 S.Ct. at 1950. Importantly, "a complaint must do more than allege the plaintiff's entitlement to relief"; it "has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211, citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). A pleading that only proffers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

We agree with MGIC that the plaintiff's ECOA claim in Count II and her FCRA claim in

4

Count III fail to state cognizable claims. However, it appears that certain FHA claims asserted in Count I should survive the motion to dismiss.

FHA claim in Count I:

In Count I, the plaintiff contends that MGIC's refusal to extend PMI while she was on maternity leave violated §§ 3604(a), 3604(b), 3605 and 3617 of the FHA (Amended Complaint at ¶¶ 90-91). In relevant part, §§ 3604(a) & (b) of the FHA provide that it shall be unlawful --

> (a) To refuse to sell or rent… *or otherwise make unavailable or deny,* a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or *in the provision of services* or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. §§ 3604(a) and (b) (emphasis added).

Courts have found that § 3604 of the FHA prohibits discriminatory insurance practices, although the text of § 3604 and its application to insurance practices is unclear. See, Ojo v. Farmers Group, Inc. 600 F.3d 1205, 1208 (9th Cir. 2010); Nationwide Mutual Insurance Co. v. Cisneros, 52 F.3d 1351, 1356-59 (6th Cir. 1995), cert. denied, 516 U.S. 1140 (1996); N.A.A.C.P. v. American Family Mut. Ins. Co., 978 F.2d 287, 298 (7th Cir. 1992), cert. denied, 508 U.S. 907 (1993). In so finding, these Courts looked to regulations promulgated by the Department of Housing and Urban Development ("HUD") to implement the Act, as HUD is authorized by Congress to issue such regulations. See, 42 U.S.C. § 3614a.

With respect to § 3604, HUD issued regulations titled "Other prohibited sale and rental conduct" that interpret § 3604 as prohibiting such acts as:

> Refusing to provide municipal services or property or hazard insurance for dwellings or providing such services or insurance

5

>     differently because of race, color, religion, sex, handicap,
>     familial status, or national origin.

24 C.F.R. § 100.70(d)(4). In <u>Cisneros</u>, <u>supra</u>, the Court concluded that HUD's above interpretation of the FHA was reasonable. 52 F.3d at 1359-60, citing <u>Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843 (1984). Similarly, the Seventh Circuit Court of Appeals in <u>American Family</u>, <u>supra</u>, found that "Section 3604 is sufficiently pliable that its text can bear the Secretary's construction [of § 3604 as prohibiting discriminatory insurance practices]." 978 F.2d at 300. The Court in <u>Ojo</u>, <u>supra</u>, concurred. 600 F.3d at 1208.

The issue here, however, is whether alleged discriminatory insurance practices relating to a previously-acquired dwelling, not a newly-acquired one, fall within § 3604. MGIC argues that the amended complaint fails to state a claim for relief under § 3604, as that section of the FHA only applies in the context of a new home acquisition, and not, as here, to a mortgage loan refinancing for a previously-acquired. To date, the Third Circuit Court of Appeals has not addressed this question, and there is conflicting case law on the issue from other courts.[2] As discussed below, however, we agree with opinions from the Seventh and Ninth Circuit Courts of Appeal which affirmatively hold that § 3604 reaches post-acquisition discrimination. See, <u>Bloch v. Frischholz</u>, 587 F.3d 771 (7th Cir. 2009); and <u>Committee Concerning Community Improvement v. Modesto</u>, 583 F.3d 690 (9th Cir. 2009).

In <u>Bloch</u>, the Seventh Circuit Court of Appeals found that both §§ 3604(a) and 3604(b) apply to post-acquisition discriminatory conduct. As to § 3604(a), the <u>Bloch</u> Court opined that "§ 3604(a) may reach post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction." 587 F.3d at 776. As

---

[2] See, parties' citation to cases supporting their respective views in defendant's memorandum of law (Doc. No. 17 at pp. 8-10), plaintiff's brief (Doc. No. 20 at pp. 15-20), and defendant's reply brief (Doc. No. 24 at pp. 10-11).

explained in Bloch, "'courts have construed the phrase 'otherwise make unavailable or deny' in subsection (a) to encompass mortgage 'redlining', insurance redlining, racial steering, exclusionary zoning decisions, and other actions by individuals or governmental units which directly affect the availability of housing to minorities.'". Id. at 777, quoting Southbend Neighborhood Improvement Ass'n. v. County of St. Clair, 743 F.2d 1207, 1209 (7th Cir. 1984).[3] Clearly, "[a] defendant can engage in post-sale practices tantamount to 'redlining' that makes a plaintiff's dwelling 'unavailable'". Bloch, 587 F.3d 777.

In Modesto, supra, the Ninth Circuit Court of Appeals also ruled that "the FHA does apply to post-acquisition discrimination." 583 F.3d at 714. The Court limited its discussion of post-acquisition claims, however, to § 3604(b).

In Modesto, the Court concluded that the FHA reaches post-acquisition discrimination for the following reasons:

> First, the statutory language does not preclude all post-acquisition claims. The statute prohibits discrimination 'in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith.' 42 U.S.C. § 3604(b). The inclusion of the word 'privileges' implicates continuing rights, such as the privilege of quiet enjoyment of the dwelling… There are few 'services or facilities' provided at the moment of sale, but there are many 'services or facilities' provided to the dwelling associated with the occupancy of the dwelling…
> Second, the regulations implementing the FHA, promulgated by [HUD at 24 C.F.R. § 100.65], also support permitting post-acquisition claims…

583 F.3d at 713.

Indeed, in relevant part, HUD regulations at 24 C.F.R. § 100.65, titled "Discrimination in terms, conditions and privileges and in services and facilities" provide:

---

[3] In the context of insurance, "redlining" is defined as "the refusal to issue insurance policies to certain persons or groups because they live or are located in an area predominantly inhabited by persons of a particular ethnicity, income level, and/or marital status." Bazzone v. Nationwide Mutual, 123 Fed.Appx. 503, 504 n.2 (3d Cir. 2005). Also see, Cisneros, 52 F.3d at 1354.

> (b) Prohibited actions under this section include, but are not limited to:
>
>> (1) Using different provisions in leases or contracts of sale, such as those relating to rental charges, security deposits and the terms of a lease and those relating to down payment and closing requirements, because of … sex [or] familial status…
>>
>> (2) Failing or delaying maintenance or repairs of sale or rental dwellings…
>> ….
>>
>> (4) Limiting the use of privileges, services or facilities associated with a dwelling…

24 C.F.R. § 100.65(b).

With respect to the above regulations, the <u>Modesto</u> Court explained:

> The sections prohibiting '[f]ailing or delaying maintenance or repairs of sale or rental dwellings' and '[l]imiting the use of privileges, services or facilities associated with a dwelling' appear to embrace claims about problems arising after the tenant or owner has acquired the property…

583 F.3d at 714.

The <u>Bloch</u> Court also opined that with respect to § 3604(b), allowing claims for post-acquistion discrimination to proceed is consistent with HUD's regulations at 24 C.F.R. § 100.65(b). 587 F.3d at 780-81. We agree with the rulings in <u>Bloch</u> and <u>Modesto</u> that § 3604 applies to post-acquisition discrimination.

However, based on the allegations in this case, it does not appear that the plaintiff has set forth a viable claim under § 3604(a). In <u>Bloch</u>, the Court stated that "[a]vailablity of housing is at the heart of § 3604(a)", as it "is designed to ensure that no one is denied the right to live where they choose for discriminatory reasons." 587 F.3d at 776 (citation omitted). Thus, in <u>Bloch</u>, the Court found that "§ 3604(a) may reach post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction." <u>Id.</u>

Here, the plaintiff asserts that despite MGIC's alleged misconduct, she continues to reside in her residence, but must pay the higher costs associated with her existing home loan (Amended Complaint at ¶ 55). Based on this fact, MGIC did not violate § 3604(a), as it did not "refuse to sell or rent… or otherwise make unavailable or deny, a dwelling" to the plaintiff.

In contrast, the plaintiff appears to have stated a cognizable claim under § 3604(b) due to MGIC's alleged refusal to issue PMI to her while she was on maternity leave. <u>Bloch</u> does not foreclose a § 3604(b) claim in this instance, for the Court opined that § 3604(b) applies to claims of discrimination arising from the terms, privileges or conditions of a sale or rental that does not necessarily make a dwelling unavailable. 587 F.3d at 779-80. In addition, <u>Bloch</u> cited with approval HUD's regulation at 24 C.F.R. § 100.65(b)(4) (quoted above) that extends § 3604(b)'s protection to acts "[l]imiting the use of privileges, services, or facilities associated with a dwelling because of" a protected classification, like sex. <u>Id</u>. at 780-81.

Mortgage financing or refinancing has been deemed to constitute a "service" associated with a dwelling. See, <u>Clifton Terrace Assoc. Ltd. v. United Technologies Corp</u>., 929 F.2d 714, 719 (D.C.Cir. 1991) (where the Court stated in dicta that "mortgage financing" entails an "essential service" related to a dwelling). Also see, <u>Beard v. Worldwide Mortgage Corp.</u>, 354 F.Supp.2d 789, 809 (W.D.Tenn. 2005) (stating that "the language of § 3604(b) is broad enough to encompass home improvement loans and refinancing loans because the burden of the debt affects individuals ability to buy or sell a dwelling", and holding that plaintiff stated a viable § 3604(b) claim against defendants who provided services in connection with the refinancing of her existing mortgage). Accord, <u>Jones v. Office of the Comptroller of the Currency</u>, 983 F.Supp. 197, 202 (D.D.C. 1997) (observing that § 3604 applies to actors involved in providing housing or services such as homeowner's insurance or financing, that are directly connected to helping

people acquire housing.). Based on the foregoing, MGIC's complained-of acts could fall within § 3604(b)'s prohibition against limiting services associated with a dwelling.

The plaintiff also contends that MGIC violated § 3605 of the FHA. In relevant part, § 3605(a) makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of … sex [or] familial status". In pertinent part, § 3605(b) defines a "residential real estate-related transaction" as the "making or purchasing of loans or *providing other financial assistance* for purchasing, constructing, improving, repairing, or maintaining a dwelling". 42 U.S.C. § 3605(b)(1)(A) (emphasis added).

In moving to dismiss this claim, MGIC argues that while § 3605 applies to discrimination in providing "financial assistance" to a borrower, mortgage insurance cannot be considered "financial assistance", as it does not provide assistance for "purchasing, constructing, improving, repairing, or maintaining a dwelling". With respect to PMI, MGIC avers that it does not insure a borrower at all, but rather a lender.

In <u>American Family</u>, the Seventh Circuit Court of Appeals declined to hold property and casualty insurers liable under § 3605. The Court opined:

> It would strain language past the breaking point to treat property or casualty insurance as 'financial assistance' – let alone as assistance 'for purchasing … a dwelling.' Insurers do not subsidize their customers or act as channels through which public agencies extend subsidies. They do not 'assist' customers even in the colloquial sense that loans are 'assistance' (a lender advances cash, with repayment deferred). Payment runs from the customer to the insurer.

978 F.2d at 297.

Other courts are in agreement. Indeed, the prevailing view is that insurance does not

10

connote "financial assistance" for purposes of § 3605.  See, Lyons v. First American Title Ins. Co., 2009 WL 5195866, *8-*10  (N.D.Cal., Dec. 22, 2009) (finding that title insurance does not provide "financial assistance' to plaintiffs for the purpose of purchasing or maintaining a dwelling under § 3605 and agreeing with the Seventh Circuit in American Family that to find otherwise would "strain language past the breaking point"); Home Quest Mortgage v. American Family Mutual Ins., 340 F.Supp.2d 1177, 1187 (D.Kan. 2004) (agreeing with American Family and holding that an insurer who furnished a business insurance policy did not provide "financial assistance", explaining that "[i]nsurance... is a form of financial protection, not financial assistance."); and Doukas v. Metropolitan Life Ins. Co., 882 F.Supp. 1197, 1202 (D.N.H. 1995) (holding that in the context of § 3605, "mortgage disability insurance is not a form of 'financial assistance' for purchasing or maintaining a dwelling"), superseded by statute on other grounds as stated in Munroe v. Compaq Computer Corp., 229 F.Supp.2d 52 (D.N.H. 2002).

Conversely, in Nevels v. Western World Ins. Co., 359 F.Supp.2d 1110 (W.D.Wash. 2004) (liability insurance) and Nat'l. Fair Housing Alliance v. Prudential Ins. Co., 208 F.Supp.2d 46 (D.D.C. 2002) (homeowner's insurance), it was ruled that claims could proceed against insurers under § 3605.  In so finding, these Courts reasoned that the insurance at issue was necessary to maintain a dwelling and constituted 'financial assistance' for purposes of § 3605. See, Nevels, 359 F.Supp.2d at 1122 (liability insurance was "necessary for the safe maintenance of Plaintiffs' adult group homes"); Nat'l. Fair Housing, 208 F.Supp.2d at 58  ('[w]ithout property insurance, most homeowners are unable to repair their homes when and if disaster should strike … [so it] provides the financial assistance necessary to maintain a dwelling").

In Lyons, supra, the Court distinguished the insurance at issue in Nevels and Nat'l. Fair Housing from the title insurance in its case, stating:

> [T]here is a meaningful distinction between homeowner's or other
> liability/property insurance, and title insurance. Homeowner's or
> other liability or property insurance provides a direct benefit to the
> homeowner or property owner in the event of loss, and is paid directly
> by the owner, to the insurance company itself. As such, the
> argument that the mandatory provision of insurance to an owner in
> these circumstances constitutes 'financial assistance' for the purposes
> of securing or maintaining a dwelling makes a certain amount of sense.
> The same logic does not necessarily apply to title insurance, however…
> [T]itle insurance is distinct from other types of insurance, in that it does
> not operate to provide direct protection solely to the homeowner.
> Rather, …title insurance protects the lender, and payments are made to
> the insurer on the lender's behalf, instead of the homeowner's behalf.
> In other words, the benefits of title insurance paid flow to the lender.
>
> In light of this distinction …, the court is not persuaded that title
> insurance sold to plaintiffs ultimately provides true 'financial assistance'
> *to plaintiffs*, for the purpose of purchasing or maintaining a dwelling, as
> is required… to qualify as a 'real estate related transaction'…

2009 WL 5195866, at *9-*10 (emphasis in original).

In a similar vein, the record shows that PMI does not insure a borrower like the plaintiff; rather, it protects a lender like PNC.[4] Thus, because the benefits of PMI (like title insurance) inure to the lender which requires it, we find that the PMI at issue does not constitute "financial assistance" to the plaintiff for purposes of § 3605. Hence, the plaintiff has not stated a viable claim under § 3605.

The plaintiff also contends that MGIC violated § 3617 of the FHA. In relevant part, § 3617 makes it unlawful "to coerce, intimidate, threaten, or *interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, … any right granted*

---

[4] See, Report of the Board of Governors of the Federal Reserve System titled *The 2008 HMDA Data: The Mortgage Market During a Turbulent Year*, 96 Fed. Res. Bull. A.169, A. 173 (2010) (attached as Exhibit 2 to MGIC's request for judicial notice). Our review of this document does not convert the defendant's motion to dismiss to one for summary judgment, for in deciding a Rule 12(b)(6) motion to dismiss, Courts "may consider facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence". In re PHP Healthcare Corp., 128 Fed.Appx. 839, 844 (3d Cir. 2005); accord, Township of South Fayette v. Allegheny County Housing Auth., 27 F.Supp.2d 582, 594 (W.D.Pa. 1998).

*by section… 3604 [or] 3605… of this title.* 42 U.S.C. § 3617 (emphasis added). The plaintiff insists that by virtue of MGIC's discriminatory refusal to issue PMI to her, it "interfered" with PNC's refinancing of her mortgage, which PNC had preliminarily approved (Amended Complaint at ¶¶ 14, 20-21, 24, 30-31, 33-35).

A § 3617 claim can apply to post-acquisition discrimination that does not result in a plaintiff's eviction. Bloch, 587 F.3d at 782. Further, "§ 3617 does not require a showing of force or violence for … interference … to give rise to liability." Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001). In Walker, the Court defined "interference" as "'the 'act of meddling in or hampering an activity or process.'" Id. at 1129, quoting Webster's Third New Int.'l Dict. 1178 (14th ed. 1961). The Court in Walker explained that a § 3617 interference claim is "broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." Id. (internal citations and quotation marks omitted). Based on the plaintiff's contentions, we find that she has stated a cognizable claim under § 3617.

For reasons discussed above, the plaintiff has set forth viable claims under §§ 3604(b) and 3617 of the FHA, but not under §§ 3604(a) and 3605. Accordingly, MGIC's motion to dismiss Count I should be granted in part and denied in part.

ECOA claim in Count II

In pertinent part, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction… on the basis of sex or marital status". 15 U.S.C. § 1691a(1). Regulations implementing the ECOA define a "credit transaction" as "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit …" 12 C.F.R. § 202.2(m).

The plaintiff claims that MGIC's refusal to issue PMI to her while she was on maternity

13

leave violated the ECOA. To establish a prima facie case under the ECOA, a plaintiff must show that (1) she was a member of a protected class; (2) she applied for credit from the defendant; (3) she was qualified for the credit; and (4) despite qualification, the plaintiff was denied credit. Chiang v. Veneman, 385 F.3d 256, 259 (3d Cir. 2004). Here, the plaintiff cannot establish the second prong of a prima facie case, as she did not apply for credit from MGIC.

The term "applicant" is defined in the ECOA as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit. 15 U.S.C. § 1691a(b). Regulations further define "applicant" as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit..." 12 C.F.R. § 202.2(e).

As asserted in the amended complaint, the plaintiff applied for credit from PNC, as she "decided to refinance her home loan through PNC" and "completed and submitted to PNC a Uniform Residential Loan Application" (Amended Complaint at ¶¶ 13-14). Conversely, the plaintiff did not apply for credit from MGIC. Rather, PNC submitted a mortgage insurance application to MGIC (Id. at ¶ 28). Indeed, the plaintiff confirms that "as of late July 2010, [she] did not know the identity of the specific mortgage insurer involved in her transaction … [but] later learned from PNC that [it was] MGIC" (Id. at ¶ 32).

Clearly, PNC was the "applicant" for PMI in this instance, not the plaintiff. Since the plaintiff did not apply for credit from MGIC, her ECOA claim should be dismissed.[5]

---

[5] In moving to dismiss this claim, MGIC avers it is not a "creditor" for purposes of the ECOA, and the plaintiff is not an "applicant" for credit to it. Having found that the plaintiff did not apply for credit from the defendant, we do not determine whether MGIC was a creditor for purposes of the ECOA.

FCRA claim in Count III:

In Count III, the plaintiff contends that MGIC's preliminary refusal to issue PMI constituted an "adverse action" under the FCRA, and thus, it was required to provide written notification to her of its action.[6] Since MGIC failed to issue such written notice to the plaintiff, she insists it violated § 1681m(a) of the FCRA (Amended Complaint at ¶ 107).

It pertinent part, 15 U.S.C. § 1681m(a) provides:

> If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall –
>
> > (1) provide oral, written, or electronic notice of the adverse action to the consumer.

15 U.S.C. § 1681m(a)(1).

In moving to dismiss this claim, MGIC avers that the FCRA does not provide a private right of action for alleged notice violations under § 1681m. We agree.

In 2003, Congress enacted the Fair and Accurate Credit Transactions Act ("FACTA"), Pub.L. 108-159, which amended § 1681m to eliminate private rights of action thereunder by adding 15 U.S.C. § 1681m(h)(8). See, Perry v. First Nat. Bank, 459 F.3d 816, 819-23 (7th Cir. 2006). Also see, Meyers v. Freedom Credit Union, 2007 WL 2753172 (E.D.Pa., Sept. 21, 2007). As explained in Meyers, prior to the enactment of FACTA, individual consumers could sue persons for failing to provide notice required by § 1681m(a), as 15 U.S.C. §§ 1681n and 1681o provided private rights of action for willful (§ 1681n) and negligent (§ 1681o) violations of the Act. Id. at *2. However, Congress eliminated private rights of action under § 1681m by adding

---

[6] As applied to insurance underwriting, an "adverse action" entails a "denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for". 15 U.S.C. § 1681a(k)(1)(B)(i).

§ 1681m(h).  Id. at *5 (citing cases).

It is provided in 15 U.S.C. § 1681m(h)(8):

(h) Duties of users in certain credit transactions

…..

(8) Enforcement

    (A) No civil actions

    Sections 1681n and 1681o of this title shall not apply to any
    failure by any person to comply with this section.

    (B) Administrative enforcement

    This section shall be enforced exclusively under section 1681s
    of this title by the Federal agencies and officials identified in
    that section.

Almost every Court considering this issue has held that "15 U.S.C. § 1681m(h)(8) bars private enforcement of § 1681m in its entirety." Perry, supra, 459 F.3d at 822 (citing numerous cases); Meyers, supra, 2007 WL 2753172, at *5 (citing cases).  Also see, Calloway v. Green Tree Servicing LLC, 607 F.Supp.2d 69, 674 (D.Del. 2009) ("pursuant to 15 U.S.C. § 1681m(h), there is no private right of action to sue for violation of 15 U.S.C. § 1681m."); Gelman v. State Farm Mutual Auto Ins., 2007 WL 2306578, *8 (E.D.Pa. 2007) ("the FCRA, as amended by FACTA, explicitly excludes private rights of action for § 1681m(d) violations"), aff'd., 583 F.3d 687 (3d Cir. 2009).  Based on the foregoing, Count III of the amended complaint should be dismissed.

Lastly, MGIC argues that the plaintiff's proposed class of plaintiffs set forth in ¶ 58 of the amended complaint -- who are defined as persons within the United States who "attempted to purchase PMI through MGIC for a first residential mortgage loan and who were, or expected to be (or whose co-applicant was, or expected to be) on short term disability leave at the time of the

loan closing" -- should be dismissed or stricken, as neither the FHA, the ECOA, nor the FCRA provide relief to persons who were discriminated against because they were on short term disability leave.[7] In opposing MGIC's argument that ¶ 58 should be dismissed or stricken, the plaintiff asserts that the gist of the amended complaint is that persons on maternity leave, or those on other forms of short term disability leave are perceived by MGIC, or regarded by it as "disabled" and thus ineligible for PMI in violation of the FHA. See, Amended Complaint at ¶¶ 20, 30, 88-89.

Under the FHA, it is unlawful to discriminate against any person in the sale or rental of a dwelling, or in the terms, conditions or privileges, or in the provision of services or facilities in connection with such a dwelling "because of a handicap". 42 U.S.C. § 3604(f)(1)&(2). In relevant part, the term "handicap" is defined in the FHA as "being regarded as having such an impairment." 42 U.S.C. § 3602(h)(3).

In the introductory paragraph of the Amended Complaint, the plaintiff asserts that she initiated this class action "based on Defendant's unlawful policy and practice of denying [PMI] to persons on short term disability leave, including but not limited to women on maternity leave." To the extent the plaintiff claims that MGIC engages in its complained-of acts because it perceives persons on short term disability leave as being handicapped or disabled, ¶ 58 should not be dismissed or stricken.

Therefore, it is recommended that the defendant's motion to dismiss the amended complaint (Document No. 16) be granted as to Counts II and III and as to claims asserted under 42 U.S.C. §§ 3604(a) and 3605 in Count I, and denied in all other respects.

---

[7] MGIC does not move to dismiss or strike the proposed class of plaintiff's set forth in ¶ 57 of the amended complaint who consist of persons within the United States who "attempted to purchase PMI through MGIC for a first residential mortgage loan and who were, or expected to be (or whose co-applicant was, or expected to be) on maternity leave at the time of the loan closing."

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing written objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal. Any party opposing written objections shall have seven (7) days from the date of service of objections to respond to them.

Respectfully submitted,

s/ ROBERT C. MITCHELL
United States Magistrate Judge

Dated: April 6, 2011